11-951-cv; 11-2218-cv
Suzanne Taylor v. Harbour Pointe Homeowners Ass'n

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term, 2011

(Argued: April 16, 2012                    Decided: August 2, 1012)

Docket Nos. 11-951-cv; 11-2218-cv

_____

SUZANNE K. TAYLOR,

*Plaintiff-Appellant-Cross-Appellee*,

v.

HARBOUR POINTE HOMEOWNERS ASSOCIATION AND CANDACE GRASER,

*Defendants-Appellees-Cross-Appellants*.

Before: JACOBS, *Chief Judge*, B.D. PARKER, and HALL, *Circuit Judges*.

_____

Cross-appeals from (1) a judgment of the United States District Court for the Western District of New York (Curtin, *J.*) granting Defendants-Appellees-Cross-Appellants Harbour Pointe Homeowners Association ("HPHA") and Candace Graser's motion for summary judgment and dismissing Plaintiff-Appellant-Cross-Appellee Suzanne Taylor's Fair Housing Act claim, and (2) an order of that court denying prevailing parties' motion for attorneys' fees under 42 U.S.C. § 3613(c)(2). We dismiss Taylor's appeal for failure to comply with Rule 28 of the Federal Rules of Appellate Procedure and Local Rule 28.1. We further conclude that Taylor's claim is frivolous, and that the district court improperly denied the HPHA and Graser's motion for attorneys' fees.

The appeal is DISMISSED. On the cross-appeal concerning fees, the order of the district court is REVERSED, and the case is REMANDED.

_____

CHARLES L. MILLER, II (Lindy Korn, *on the brief*), Law
Office of Lindy Korn, Buffalo, NY, *for Plaintiff-*
*Appellant-Cross-Appellee*.

MINRYU KIM (Alan Bozer, *on the brief*), Phillips Lytle LLP, Buffalo, NY, *for Defendants-Appellees-Cross-Appellants*.

BARRINGTON D. PARKER, *Circuit Judge*:

Suzanne Taylor appeals from a judgment of the United States District Court for the Western District of New York (Curtin, *J.*). The court granted Harbour Pointe Homeowners Association ("HPHA") and Candace Graser's motion for summary judgment and dismissed Taylor's failure to accommodate claim under the Fair Housing Act ("FHA").[1] The HPHA and Graser cross-appeal from an order of the district court denying their motion, as prevailing parties, for attorneys' fees under 42 U.S.C. § 3613(c)(2). Because Taylor did not comply with Rule 28 of the Federal Rules of Appellate Procedure or Local Rule 28.1, we dismiss her appeal. In addition, because we conclude that Taylor's FHA claim is frivolous, the HPHA and Graser are entitled to an award of attorneys' fees.

## BACKGROUND

The material facts are not in dispute. For several years, Taylor, a member of the bar who alleges that she suffers from clinical depression, has lived in Harbour Pointe Common, a private community in Buffalo, New York. The community is managed by the HPHA. During the time the events that gave rise to this action occurred, Graser was the president of the HPHA's board of directors.

---

[1] In 1988, Congress passed the Fair Housing Amendments Act ("FHAA"), extending protections against housing discrimination under the FHA, 42 U.S.C. § 3601 *et seq*., to, among others, individuals with disabilities. 42 U.S.C. § 3604(f)(1). For ease of reference, we refer to the statute under which Taylor brought suit as the FHA.

For a number of years, Taylor's glass-enclosed patio, visible from the main thoroughfare of Harbour Pointe Common, was in a state of disarray. Neighbors described the patio as a "pigsty." **[A 146]** At various times, residents of the complex approached Graser expressing displeasure at the patio's disorderly state. Graser repeatedly asked Taylor to clean up her patio; Taylor repeatedly stated that she would. **[A 150-53]** In response to particular requests, Taylor gave Graser and other neighbors permission to move a barbecue grill off Taylor's patio. She also permitted them to put up trellises and gave them permission to hang curtains to block the view of the patio from the road. Although Taylor's neighbors offered to assist her in cleaning the patio, Taylor expressed a preference to clean it herself. According to Taylor, in June 2008 she told Graser that if her neighbors – rather than Taylor herself – were to clean up her patio, it would exacerbate her depression; specifically, it would "set[] [her] back in [her] recovery . . .[,] isolate [her], . . . and . . . make[] it that much harder . . . to make any progress at all." **[A 235.]**

On June 4, 2008, Taylor took a trip out of town. While she was away, her neighbor Norman Cramp noticed that Taylor's garage door was open. **[A 170-71]** Cramp contacted Taylor, who ultimately gave him permission to retrieve her garage door opener and close the door. **[A 134-36]** Cramp, Graser, and a third neighbor, George Woepperer, went to Taylor's house. They closed her garage door and, while there, cleaned up Taylor's patio and consolidated several items in the corner of Taylor's garage. **[A 159-60]**

Taylor returned home on June 10 and discovered that the mess on her patio had been cleared. She subsequently e-mailed Graser and the HPHA to complain of their "trespass," and also called the police and filed a police report complaining that her neighbors had engaged in

3

trespass and burglary. **[A 9]** Later, on August 4, Taylor filed a verified complaint against the HPHA with the Department of Housing and Urban Development ("HUD") and the New York State Division of Human Rights ("DHR"), alleging discriminatory housing practices on the basis of her disability in violation of the FHA and Article 15 of New York Human Rights Law. **[A 315]** In October 2008, the DHR issued a Determination and Order After Investigation concluding that there was "no evidence of [Taylor]'s disability or that the accumulation of and/or clearing away of clutter is related to a disability." **[A 19.]** The next month, HUD affirmed the DHR's decision.

On March 19, 2009, Taylor filed suit against the HPHA and Graser in the district court. **[A 6]** She raised a failure to accommodate claim under the FHA as well as state law claims of trespass to real property, trespass to chattels, and conversion. *See* 42 U.S.C. §§ 3601 *et seq.* At the close of discovery, the HPHA and Graser moved for summary judgment. **[A 22]** The district court granted that motion after concluding that Taylor had never requested reasonable accommodation, as was required for her to establish a prima facie claim of failure to accommodate, and declined to exercise supplemental jurisdiction over Taylor's state law claims. **[SPA 1-13]** *Taylor v. Harbour Pointe Homeowners Ass'n*, No. 09-cv-257, 2011 WL 673903, at *7 (W.D.N.Y. Feb. 17, 2011).

After judgment was entered against Taylor, the HPHA and Graser moved under 42 U.S.C. § 3613(c)(2), which allows district courts in their discretion to award reasonable attorneys' fees and costs to the prevailing party in an action brought under the FHA. **[A 494]** Although Taylor had failed to make out a *prima facie* case for disability discrimination under the

4

FHA, the district court was "reluctant to . . . convert [that] finding into a showing . . . that [Taylor] lacked any reasonable grounds for bringing suit, " and determined that Taylor's discrimination claim was not "entirely 'unreasonable or without foundation.'" *Taylor v. Harbour Pointe Homeowners Ass'n*, No. 09-cv-257, 2011 WL 1792766, at *3 (W.D.N.Y. May 6, 2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). **[SPA 19.]** The parties filed cross-appeals, with Taylor challenging the district court's determination on the merits and the HPHA and Graser challenging the district court's denial of their application for attorneys' fees.

## DISCUSSION

As a threshold matter, we turn to the HPHA and Graser's argument that we should strike Taylor's brief and dismiss her appeal for failure to comply with Rule 28 of the Federal Rules of Appellate Procedure as well as Local Rule 28.1.

Rule 28(a) requires an appellant's brief to contain, "under appropriate headings and in the order indicated," among other things,

> (4) a jurisdictional statement . . . ; (5) a statement of the issues presented for review; (6) a statement of the case briefly indicating the nature of the case, the course of proceedings, and the disposition below; (7) a statement of facts relevant to the issues submitted for review with appropriate references to the record . . . ; (8) a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief . . . ; [and] (9) the argument, which must contain . . . (B) for each issue, a concise statement of the applicable standard of review.

5

Fed. R. App. P. 28(a).  In addition, Local Rule 28.1(a) states the following: "A brief must be concise, logically arranged with proper headings, and free of irrelevant matter.  The court may disregard a brief that does not comply with this rule."

An appellant's failure to comply with Rule 28 invites dismissal of the appeal.  For instance, in *Ernst Haas Studio v. Palm Press, Inc.*, we dismissed the appeal where the appellant's brief failed to cite a single statute or court decision on point or present "a coherent legal theory . . . that would sustain the complaint."  164 F.3d 110, 111-12 (2d Cir. 1999) (per curiam).  The appellant's brief was so deficient as to amount to "an invitation to the court to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for appellant." *Id.* at 112; *see also Murray v. Mitsubishi Motors of N. Am.*, 462 F. App'x 88, 91(2d Cir. 2012) (summary order) (noting that "noncompliance warrants dismissal of the appeal" and dismissing case where "brief borders on the incomprehensible"); *Sioson v. Knights of Columbus*, 303 F.3d 458, 459-60 (2d Cir. 2002) (per curiam) (dismissing appeal where brief lacked statement of facts, summary of argument, and legal argument sections).  At other times, where the failure to comply with Rule 28 was not so stark, we have reached the merits because "declining to consider th[e] appeal would unfairly penalize plaintiffs for [their attorney's] failings as an advocate." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004).

Taylor's brief utterly fails to comply with Rule 28 and Local Rule 28.1.  The brief contains no jurisdictional statement and nowhere indicates the applicable standards of review. Instead of a statement of the issues, statement of the case, statement of facts, and summary of argument, Taylor's brief has a short "Preliminary Statement."  That statement does not identify

6

specific, discrete issues, and instead offers a scattered summary of Taylor's legal argument and facts, without citations to the record. Lastly, in lieu of the sort of narrative factual summary that generally constitutes a statement of facts, Taylor's brief has a bulleted "Summary of Facts Relating to the Request for Accommodation" that contains various factual assertions and legal arguments. Some of those bulleted points cite to the record and some do not. In her reply brief, rather than acknowledging or correcting her brief's deficiencies, Taylor "contends that the preliminary statement succinctly encompasses th[e] very points" that Rule 28 requires. We disagree. Taylor's brief falls woefully short of complying with either Rule 28 or Local Rule 28.1. Considering those failures and, as discussed below, the utter lack of merit of Taylor's claims, dismissal would not "unfairly penalize" Taylor – an attorney – for her attorney's shortcomings. Accordingly her appeal is dismissed.

Turning to the question whether the HPHA and Graser are entitled to an award of attorneys' fees, our analysis of the cross-appeal begins with an inspection of Taylor's now-dismissed appeal. Taylor claims that the defendants violated her rights under the FHA, and specifically that they "denied Ms. Taylor facilities and services that she was due as a member of the [HPHA] by . . . failing to accommodate Plaintiff Suzanne Taylor for her disability." **[A 12.]** She argues that the HPHA and Graser could and should have left her free to manage her cluttered patio on her own and that, when Graser, Cramp, and Woepperer cleaned up the patio, they discriminated against her by refusing to accommodate her depression by letting her manage her messy patio in her own manner.

7

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The statute requires "that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002). Under the FHA, an entity engages in discrimination if it refuses to make "reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [a handicapped person] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The statute requires "that changes be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 333 (2d Cir. 1995) (quoting H.R. Rep. No. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186). A defendant must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought "do not pose an undue hardship or a substantial burden." *Id*. at 335.

To make a prima facie showing in support of her failure to accommodate claim, Taylor was required to give the HPHA and Graser an opportunity to accommodate her. *See Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003). The defendants must have had an idea of what accommodation Taylor sought prior to their incurring liability for failing affirmatively to grant a reasonable accommodation. *Id*. at 579. Here, it is undisputed that Taylor never requested any accommodation. Instead, Taylor conceded at her deposition that she

8

"didn't ask for any special accommodations with regard to the patio because they had no authority to tell me." **[A 104.]** Taylor also wrote to DHR, in support of her administrative claim, that she "never advised the [HPHA] that [she] required special accommodation, because [she] did not *need* special accommodation." **[A 181.]**

Taylor's claim fails even in light of her alleged statement to Graser that her "recovery has to be at [her] own pace and [her] own doing because . . . somebody coming and cleaning out my patio, sets me back in my recovery." **[A 235]** That statement, even if true, was not a request for relief from any HPHA rules or practices, and therefore was not a request that the defendants could have granted or denied.

Also, as she herself testified, Taylor had repeatedly given Graser and the HPHA permission to clean up her patio. In 2005, Taylor told Graser that Graser could move items, including a barbecue grill, from Taylor's patio into storage. **[A 97, 127.]** And in 2008, in the days and weeks leading up to the patio cleaning that precipitated this lawsuit, Taylor told Graser that Graser could put up trellises and curtains to block the view of Taylor's patio from the community's main thoroughfare. **[A 134.]**

In addition, it is not clear what rules or practices Taylor could have sought accommodation from. There is no dispute that, at all relevant times, the HPHA had no policy requiring community residents to maintain their patios in an orderly fashion. Taylor suggests that Graser had a policy of "wheedling and cajoling" Taylor to clean her patio. Far from the nefarious conduct that Taylor suggests, however, the record indicates that Taylor's neighbors acted in what is best described as a neighborly manner. Out of concern for their community's

9

appearance, they directly and honestly communicated their concerns and frustrations about Taylor's patio. When the patio remained messy, they lent their time and effort to clean it. Without Taylor's requesting any accommodation, there was no reason for the defendants or anyone else to believe that such apparently neighborly conduct might constitute some sort of discriminatory act, or a harm of any conceivable kind.[2]

In their cross-appeal, the HPHA and Graser contend that the district court abused its discretion when it declined to grant their motion for attorneys' fees and costs. We agree. They further contend that they have spent significant time and money defending against Taylor's FHA claim, which is groundless and frivolous. We again agree.

The FHA provides that a district court may, in its discretion, grant attorneys' fees and costs to the prevailing party in an FHA discrimination case. 42 U.S.C. § 3613(c)(2). Although fees are regularly awarded to prevailing plaintiffs who obtain some significant measure of relief, they are not routinely awarded to prevailing defendants "unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co.*, 434 U.S. at 422; *see also Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006). A fee award to a prevailing defendant is appropriate only when an action is "'unreasonable, frivolous, meritless or vexatious.'" *Christiansburg Garment Co.*, 434 U.S. at 421 (quoting *Carrion v. Yeshiva Univ.*, 535 F.2d 722, 727 (2d Cir. 1976)). Awarding fees

---

[2] We neither hold nor suggest that Taylor's failure to request an accommodation was the only deficiency in her federal claim.

to prevailing defendants under such circumstances "protect[s] defendants from burdensome litigation having no legal or factual basis." *Id*. at 420.

The district court determined that Taylor's claim was not entirely unreasonable or without foundation and, accordingly, the defendants were not entitled to a fee award. Specifically, the court wrote that Taylor "articulated a reasonable basis for her belief that Ms. Graser knew or should have known about [Taylor's] disability, and should have accommodated her disability by honoring her request to be allowed to recover at her own pace without outside interference." *Taylor*, 2011 WL 1792766, at *3. **[SPA 19.]** As discussed above, however, the record is pellucid that Taylor never requested an accommodation, and therefore the district court was incorrect to criticize the defendants for failing to make one. Even if Graser knew of Taylor's disability, there simply was no way to provide relief from, or an exception to, an HPHA policy that did not exist. For that reason, Taylor's claim is meritless. To be clear, by "meritless" we mean "groundless or without foundation," and not merely that Taylor ultimately lost her case. *Christiansburg Garment Co.*, 434 U.S. at 421.

In addition, our Court has recognized that, even if a prior proceeding has no preclusive effect, the slate still may not be clean. "[I]n view of the failure of . . . previous litigation," a plaintiff raising "substantially the same charges" is aware of the possibility that her claim lacks merit and that an award of counsel fees to her adversary may be warranted. *Carrion*, 535 F.2d at 728. Here, the baseless nature of Taylor's claim is reinforced by the DHR decision dismissing her administrative complaint. As previously noted, DHR determined that there was no probable cause to support Taylor's housing discrimination claim and that there was no evidence to support

11

a finding that Taylor is disabled, that her messy porch was related to any disability, or that she requested any accommodation. **[A 19-20.]** While these conclusions did not preclude further litigation, the full extent of legal and factual shortcomings laid bare in the administrative proceedings should have been a powerful clue to Taylor, a licensed attorney, that her case had no merit. Furthermore, the fact that Taylor told DHR in writing that she never requested and did not need any special accommodation from the HPHA **[A 181]** should have been an even more potent signal to her that proceeding with a federal failure to accommodate claim was improper. Nevertheless, Taylor continued to pursue the claim.

                                        *     *     *

For these reasons, and those articulated above, we conclude that the claim was manifestly without merit and that an award of counsel fees to the defendants is appropriate. We remand to the district court to determine the proper amount of that award.

                                        **CONCLUSION**

Taylor's appeal is **DISMISSED**. On the cross-appeal, the order of the district court denying attorneys' fees is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.